IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-01827

LISA LESYSHEN,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS;
RYAN LONG, in his individual capacity;
F/N/U GATES-FAUST, in their individual capacity;
JOHN DOE, in their individual capacity;
DENVER METRO PROTECTIVE SERVICES;
BRANDON AQUILA; and
BRANDON ROBINSON,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, by and through her attorneys, David A. Lane and Liana Orshan of KILLMER LANE, LLP, respectfully alleges for her Complaint and Jury Demand as follows:

**I. INTRODUCTION**

1.      This is an action for damages and other relief against Colorado Department of Corrections ("DOC"), Denver Metro Protective Services ("DMPS"), and several of their employees. Lisa Lesyshen, an inmate in custody of DOC, sustained serious injuries when the driver of the van in which DMPS was transporting her to a medical appointment braked abruptly, and Ms. Lesyshen was thrown from her wheelchair. Due to DOC's and DMPS's deliberate

1

indifference and negligence in failing to secure her to her wheelchair in the transport vehicle, Ms. Lesyshen suffered serious physical and emotional injuries.

## II. JURISDICTION AND VENUE

2.      This action arises under the Constitution and laws of the United States.

3.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. § 1988. This Court has jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all times relevant to the subject matter of this Complaint.

5.      All available administrative remedies have been exhausted to the extent required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). There are no other administrative exhaustion requirements that would pose as a bar to the claims asserted herein.

## III. PARTIES

**Plaintiff:**

6.      At all times relevant to the subject matter of this Complaint, Plaintiff Lisa Lesyshen was a citizen of the United States and a resident of the State of Colorado.

7.      At all relevant times, Plaintiff Lisa Lesyshen was detained at two correctional facilities operated by the Colorado Department of Corrections: Denver Reception and Diagnostic Center ("DRDC") and Denver Women's Correctional Facility ("DWCF"). DRDC and DWCF are referred to collectively herein as "Denver Complex."

**Defendants:**

2

8.      Defendant Colorado Department of Corrections ("DOC") is an agency of the

State of Colorado that operates state prisons and is responsible for maintaining and providing for

the care, custody, and supervision of individuals detained at such prisons and jails.

9.      Denver Women's Correctional Facility, located at 3600 Havana Street, Denver,

CO 80239, is a prison in the Colorado state prison system. It is operated by the Colorado

Department of Corrections.

10.     Denver Reception and Diagnostic Center, located at 10900 Smith Road, Denver,

CO 80239, is a prison in the Colorado state prison system. It is operated by the Colorado

Department of Corrections.

11.     At all times relevant to the subject matter of this litigation, Defendant Ryan Long

was a citizen of the United States and a resident of Colorado and was acting under color of state

law and within the scope of his employment in his capacity as Warden of DRDC. As Warden,

Mr. Long was responsible for overseeing all operations at DRDC, including establishing

procedures for the operations of DRDC on a day-to-day basis, the hiring of prison staff, and

ensuring that all DRDC employees were properly trained.

12.     At all times relevant to the subject matter of this litigation, F/N/U Gates-Faust

was a citizen of the United States and a resident of Colorado and was acting under color of state

law and within the scope of their employment in their capacity as Associate Warden of DRDC,

which included overseeing operations and hiring, training, and supervision of all staff at DRDC.

13.     At all times relevant to the subject matter of this litigation, Defendant John Doe,

whose name is currently unknown to Plaintiff, was a citizen of the United States and a resident of

Colorado and was acting under color of state law and within the scope of their employment in

their capacity as a correctional officer employed by DOC at DRDC.

3

14.     At all times relevant to the subject matter of this litigation, Denver Metro Protective Services ("DMPS"), located at 2121 South Blackhawk Street, Suite 230, Aurora, CO 80014, was contracted by Colorado Department of Corrections to transport inmates like Ms. Lesyshen to medical and other appointments.

15.     At all times relevant to the subject matter of this litigation, Defendant Brandon Aquila was a citizen of the United States and a resident of Colorado and was acting under color of state law and within the scope of his employment in his capacity as Owner and Director of DMPS.

16.     At all times relevant to the subject matter of this litigation, Defendant Brandon Robinson was a citizen of the United States and a resident of Colorado and was acting under color of state law and within the scope of his employment in his capacity as Transport Specialist at of DMPS.

17.     Defendants Long, Gates-Faust, Doe, Aquila, and Robinson are collectively referred to herein as "Individual Defendants."

18.     Defendants Aquila, DMPS, and Robinson are collectively referred to herein as "DMPS Defendants."

## IV. FACTUAL ALLEGATIONS

### *Ms. Lesyshen sustained serious injuries after being thrown from her wheelchair.*

19.      On April 30, 2024, Lisa Lesyshen, who is quadriplegic and has limited use of her arms, was an inmate at Denver Reception and Diagnostic Center. Due to her quadriplegia, Ms. Lesyshen uses a wheelchair.

20.     Defendant John Doe, a correctional officer at DRDC, had brought Ms. Lesyshen to DMPS's transport van without supplying a seatbelt or other restraint that secured her body to

4

her wheelchair. Thus, while Ms. Lesyshen's wheelchair was secured to the van, her body was not secured to her wheelchair.

21.     At approximately 8:50 a.m., Ms. Lesyshen was being transported back to DRDC after a medical appointment in Aurora, Colorado. While Ms. Lesyshen was in the back of DMPS's van, the van's driver, Defendant DMPS employee Brandon Robinson, slammed on the brakes to avoid a traffic collision.

22.     Because, as Defendant Robinson knew, neither DMPS nor DOC had supplied Ms. Lesyshen with a lap or shoulder seatbelt or other restraint, the abrupt stop caused Ms. Lesyshen to be thrown several feet out of her wheelchair.

23.     As a result of the accident, Ms. Lesyshen suffered several serious injuries. The accident fractured Ms. Lesyshen's right femur, spine, hip, and exacerbated a prior injury to her right knee.

24.     Treatment of the fractured femur required insertion of a long metal rod in Ms. Lesyshen's hip, secured with two pins and bolts. Due to the rod, Ms. Lesyshen now cannot bend her left leg appropriately when inserting a catheter (necessary due to her quadriplegia), making the procedure very difficult for her. Her hip has been very tight since the accident, which also makes inserting a catheter difficult.

### *Defendants' negligence and deliberate indifference caused Ms. Lesyshen's damages.*

25.     All Defendants knew, and it was obvious, that failure to supply Ms. Lesyshen a wheelchair seatbelt presented a substantial risk of serious harm.

26.     Even before the April 30th accident, DOC/DMPS had never provided Ms. Lesyshen a wheelchair seatbelt when she was being transported, despite the foreseeable and obvious risks of failing to do so.

27.     Showing that CDOC has a pattern and practice of knowingly failing to transport Ms. Lesyshen safely, DOC deliberately exposed Ms. Lesyshen to more potential harm by transporting her without a seatbelt again to another medical appointment on July 9, 2025. CDOC transported Ms. Lesyshen from Denver Women's Correctional Facility to University Hospital in a storage van.

28.     After her appointment, Ms. Lesyshen was placed into a different van without a wheelchair seat belt. Ms. Lesyshen informed DOC Officers Rivas and Emeh about the prior incident on April 30, 2024, and her need for a seat belt. Officer Rivas offered Ms. Lesyshen a bungee cord in place of a seat belt. When Ms. Lesyshen refused, Officer Rivas instructed Officer Emeh to position himself behind the wheelchair to physically hold Ms. Lesyshen in her wheelchair for the duration of the trip, an obviously dangerous method of transportation.

29.     DMPS had known issues with its transport vehicles throughout its contract term with DOC. For example, in 2023, six current and former employees of the Colorado Springs location of DMPS spoke with the media about DMPS's refusal to rectify the dangerous conditions of its inmate transport vehicles.[1] Accordingly, DMPS transport vans posed an even greater risk beyond the existing obvious and foreseeable dangers of traffic collisions or near traffic collisions when a passenger is not secured.

30.     As the Warden and Associate Warden of DRDC, Defendants Long and Gates-Faust made the decision for DOC to not supply DMPS with wheelchair seatbelts for transport of DRDC inmates.

---

[1] *See* https://www.fox21news.com/top-stories/denver-metro-protective-services-accused-of-ignoring-safety-issues-with-inmate-transport-vehicles/.

31.     Defendant Aquila, who was the Owner and Operations Director of DMPS, was responsible for supplying wheelchair seatbelts for DMPS's transport vans and made a deliberate decision not to do so.

32.     Defendants recklessly failed to protect Ms. Lesyshen from the obvious, known, and substantial risk to her safety posed by the failure to supply a wheelchair seatbelt for transport.

33.     The need to supply wheelchair seatbelts for transport of inmates in wheelchairs was so obvious in light of Defendants' knowledge of the ubiquity of traffic incidents (including both collisions and dangerous consequences of attempting to avoid collisions) that failure to supply such restraints constituted deliberate indifference to the substantial risk of serious harm.

34.     Accordingly, Defendants knowingly, recklessly, and intentionally disregarded obvious serious risks to Ms. Lesyshen in failing to supply her a wheelchair seatbelt for transport.

35.     Defendants' conduct was so grossly reckless that the harm Ms. Lesyshen suffered was virtually inevitable.

36.     Due to Defendants' deliberate indifference, Ms. Lesyshen suffered and continues to suffer significant physical pain and emotional distress.

**V. CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**U.S.C. § 1983 – Eighth Amendment –**
**Failure to Protect and Provide Humane Conditions of Confinement**
**(Against Denver Metro Protective Services and Individual Defendants)**

37.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

38.     Individual Defendants and DMPS were acting under color of state law in their actions and inactions at all times relevant to this action.

7

39.     At all relevant times, the described conduct of the Individual Defendants was taken within the course and scope of their official duties and employment.

40.     At all relevant times, Ms. Lesyshen was a posttrial detainee subject to the protections of the Eighth Amendment to the United States Constitution.

41.     Under the Eighth Amendment, DMPS and Individual Defendants had a duty to protect Ms. Lesyshen, a prisoner in custody of DOC, from harm.

42.     The failure to provide a wheelchair seatbelt or similar restraint to transport Ms. Lesyshen constituted the failure to provide Ms. Lesyshen with humane and adequately safe conditions of confinement as an inmate within custody of DOC.

43.     The harm actually suffered by Ms. Lesyshen due to the dangerous conditions of confinement provided, including physical injuries, was substantial.

44.     Individual Defendants and DMPS knew that failure to provide a wheelchair seatbelt to transport Ms. Lesyshen presented an excessive risk to Ms. Lesyshen's safety.

45.     Despite their knowledge that failure to provide a wheelchair seatbelt to transport Ms. Lesyshen presented an excessive risk to Ms. Lesyshen's safety, DMPS and Individual Defendants made a conscious and deliberate decision not to ensure that Ms. Lesyshen was supplied a wheelchair seatbelt or other similar restraint when she was transported.

46.     Such conscious and deliberate decisions by DMPS and Individual Defendants put Ms. Lesyshen at substantial risk of suffering serious harm.

47.     Individual Defendants and DMPS' conscious and deliberate decisions not to protect Ms. Lesyshen, despite knowledge of the risk to her safety, constituted deliberate indifference to and willful and wanton disregard of the substantial risk of serious harm to Ms. Lesyshen, thereby depriving Ms. Lesyshen of life's necessities and failing to provide her humane

8

conditions of confinement, in violation of Ms. Lesyshen's Eighth Amendment right to be free from cruel and unusual punishment.

48.     By consciously and deliberately failing to take adequate action to protect Ms. Lesyshen from the known and substantial risk of serious harm, Individual Defendants and DMPS knowingly, intentionally, willfully and maliciously disregarded the obvious serious risks of bodily injury to Ms. Lesyshen, failed to provide humane conditions of confinement, deprived Ms. Lesyshen of life's necessities, and violated Ms. Lesyshen's Eighth Amendment right to be free from cruel and unusual punishment, resulting in substantial harm to Ms. Lesyshen.

49.     The acts and omissions of Individual Defendants were engaged in pursuant to the custom, policy, and practice of DMPS and DRDC as instituted by Defendants Warden Long and Associate Warden Gates-Faust.

50.     Individual Defendants and DMPS knew that their acts or omissions were substantially certain to cause the violation of constitutional rights of inmates like Ms. Lesyshen, and these Defendants consciously or deliberately chose to disregard this risk of harm in failing to provide a wheelchair seatbelt for transport of inmates and/or ensure that Ms. Lesyshen was not transported without a wheelchair seatbelt or similar restraint.

51.     The need to do so was so obvious, and the failure to do so was so likely to result in the violation of constitutional rights, such as those described herein, that Individual Defendants and DMPS's conduct constituted deliberate indifference to the rights of inmates like Ms. Lesyshen. These Defendants exhibited deliberate indifference to the substantial, obvious, and known risk of substantial harm to Ms. Lesyshen, and other inmates at DRDC.

52.     Defendants Long and Gates-Faust and DMPS proximately caused a violation of Ms. Lesyshen's constitutional rights by failing to implement effective practices, policies,

discipline, and procedures that would have protected inmates, including Ms. Lesyshen, from the substantial and known risk of serious harm posed by the failure to supply a wheelchair seatbelt to inmates like Ms. Lesyshen.

53.     Individual Defendants and DMPS set in motion a series of events that they knew would cause an inmate in a similar situation as Ms. Lesyshen to be deprived of her constitutional right; but for the above acts or omissions of these Defendants, Ms. Lesyshen would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

54.     Individual Defendants' and DMPS's actions and inactions were taken in reckless and callous indifference to the federally protected rights of Ms. Lesyshen.

55.     The acts or omissions of Individual Defendants and DMPS were the legal and proximate cause of Ms. Lesyshen's damages in that she suffered physical pain and injuries and mental and emotional pain and anguish, and continues to suffer physical and mental and emotional pain and anguish to this day.

56.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, omissions, and/or practices described above, Ms. Lesyshen suffered and continues to suffer injuries, damages and losses as set forth herein.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 12131 *et seq.***
**Title II of the Americans with Disabilities Act of 1990, as Amended –**
**Unlawful Discrimination and Failure to Reasonably Accommodate**
**(Against Defendant Colorado Department of Corrections)**

57.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

58.     The DOC facilities at which Ms. Lesyshen was detained were public entities within the meaning of Title II of the ADA.

10

59.     At all relevant times, Ms. Lesyshen had a disability, a record of disability, or was regarded as having a disability within the meaning of the ADA. For example, Ms. Lesyshen had a physical impairment that substantially limited, among other things, her ability to walk, an activity that is considered a major life activity for purposes of the ADA.

60.     Ms. Lesyshen was a qualified individual with a disability within the meaning of Title II of the ADA because at all relevant times, she met the essential eligibility requirements for the receipt of services provided by, or participation in programs or activities at, DOC facilities.

61.     Because Ms. Lesyshen's physical impairments were obvious, DOC, through its agents, had knowledge of his disability.

62.     Transferring inmates at the DOC facilities where Ms. Lesyshen was detained to be to medical and other appointments was an aid, benefit, or service that was afforded to the inmates at these facilities. In denying Ms. Lesyshen safe transport, DOC denied her the opportunity to participate in or benefit from that aid, benefit, or service on an equal basis as those without a disability.

63.     DOC had knowledge that for Ms. Lesyshen to have meaningful access to its programs and services, including but not limited to transport to medical appointments, she needed a reasonable modification to the prisons' rules, policies, or practices. DOC had such knowledge because Ms. Lesyshen's need for such modification was obvious and/or previously reported.

64.     Providing Ms. Lesyshen a wheelchair seatbelt for transport is a reasonable modification to the prison's rules, policies, or practices.

11

65.     By failing to provide a wheelchair seatbelt, DOC denied Ms. Lesyshen a reasonable modification. DOC thereby excluded Ms. Lesyshen from participation in or denied her the benefits of the prisons' services, programs, or activities because of her disability and/or discriminated against Ms. Lesyshen because of her disability.

66.     DOC's above acts or omissions were taken willfully and wantonly or with deliberate indifference to the strong likelihood that doing so would likely result in a violation of the ADA or its implementing regulations.

67.     DOC failed to enact adequate policy, procedure, or practice and to properly train, supervise and/or discipline its employees regarding the proper treatment of, and accommodations for, individuals with disabilities.

68.     This inadequate policy, procedure, practice, training, supervision, and/or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to DOC.

69.     In light of the duties and responsibilities of DOC personnel, the need for specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate policy, procedure, practice, training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that DOC is liable for its failure to enact adequate policy, procedure, practice and/or properly train, supervise, and/or discipline its subordinate employees and agents.

70.     Such failure to enact adequate policy and procedure and/or to properly train and supervise was the moving force behind and proximate cause of the violations of Plaintiff's federally protected rights described herein,.

71.     The violation by DOC of Title II of the ADA caused Ms. Lesyshen's injuries and associated damages.

72.     Ms. Lesyshen seeks injunctive relief including but not limited to providing her necessary restraint for safe transport by DOC to medical and other appointments.

**THIRD CLAIM FOR RELIEF**
**29 U.S.C. § 701, *et seq.***
**Section 504 of the Rehabilitation Act –**
**Unlawful Discrimination**
**(Against Defendant Colorado Department of Corrections)**

73.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

74.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

75.     At all relevant times, Ms. Lesyshen was an individual with a disability within the meaning of the Rehabilitation Act of 1973.

76.     DOC receives and benefits from federal financial assistance as that term is used in 29 U.S.C. § 794.

77.     Defendants have discriminated against Plaintiff on the basis of disability in violation of 29 U.S.C. § 794 and its implementing regulations as more fully described above. Such discrimination includes but is not limited to failure to provide reasonable modifications and accommodations, all solely on the basis of disability.

13

78.    DOC has acted with deliberate indifference to the strong likelihood that pursuit of DOC's policies at issue, and failure to provide accommodations and modifications, would likely result in a violation of federally protected rights.

79.    Ms. Lesyshen was qualified to participate in the services, programs, activities, and benefits provided to prisoners at the DOC facilities at which she was detained, within the meaning of the Rehabilitation Act of 1973.

80.    DOC denied Ms. Lesyshen access to programs, benefits, and services provided to other persons in those DOC facilities solely on the basis of her disability and for which she is qualified to participate, thereby violating the Rehabilitation Act of 1973.

81.    DOC excluded Ms. Lesyshen from participation in its services, programs and activities, and has denied her the rights and benefits accorded to other prisoners and detainees, solely by reason of Ms. Lesyshen's disability in violation of Section 504. In addition, DOC violated Section 504 by intentionally failing or refusing to provide reasonable accommodations and modifications to its policies, practices, and procedures, to allow Ms. Lesyshen the ability to fully participate in DOC services, programs, and benefits.

82.    Despite the clear provisions of the Rehabilitation Act of 1973, DOC persisted in imposing conditions and practices which discriminated against Ms. Lesyshen.

83.    In violating the Rehabilitation Act, DOC acted intentionally, maliciously, and/or with reckless and/or deliberate indifference to Plaintiff's federally protected rights.

84.    As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages, physical injuries, including but not limited to deterioration of her medical condition, pain and suffering, inconvenience, emotional distress, and impairment of quality of life.

14

85.     Plaintiff has been injured and aggrieved by and will continue to be injured and aggrieved by DOC's discrimination.

86.     Ms. Lesyshen seeks injunctive relief including but not limited to providing her necessary restraint for safe transport by DOC to medical and other appointments.

**FOURTH CLAIM FOR RELIEF**
**Negligence**
**(Against Defendants Denver Metro Protective Service, Aquila, and Robinson)**

87.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

88.     At all times relevant, DMPS was a private corporation that contracted with DOC to provide transport services to inmates at DOC, and DMPS is not entitled to sovereign or governmental immunity.

89.     At all times relevant, Defendants Aquila and Robinson were private individuals employed by DMPS and thus not entitled to sovereign or governmental immunity.

90.     At all times relevant, Ms. Lesyshen was under the responsibility and care of DMPS Defendants.

91.     DMPS Defendants had a duty of reasonable care to safely transport detainees at DRDC, including Ms. Lesyshen.

92.     DMPS Defendants owed Ms. Lesyshen a duty to exercise the degree of care, skill, caution, diligence, and foresight exercised by and expected of entities and individuals in similar situations.

93.     DMPS Defendants breached their duty of care to Ms. Lesyshen and deviated from the standard of care they owed her when they failed to provide her with a wheelchair seatbelt or otherwise ensure she was safely secured to her wheelchair for transport.

15

94.     As a direct and proximate result of the DMPS Defendants' breach of their duty to Ms. Lesyshen, she suffered significant physical and mental pain and suffering and other damages.

95.     DMPS is sued directly and indirectly for negligence, negligent supervision, and negligent training of staff; for the acts and omissions of agents and/or employees; and for the herein described acts by involved employees, agents, staff, and affiliates, who were acting within the scope and course of their employment.

96.     DMPS is vicariously liable for the negligent acts and omissions by its agents and/or employees, including, but not limited to, those named individually herein, and those directly liable for negligent failures in training, policies, and practices.

97.     DMPS is directly liable for breaching its duty to exercise reasonable care in its training and supervision of its employees and agents in a manner that provided DRDC detainees with reasonably safe transport.

98.     DMPS knew or should have known that the lack of adequate supervision and training of its employees and agents was likely to harm DRDC detainees in need of transport, like Ms. Lesyshen.

99.     In failing to exercise reasonable care in the training and supervision of its employees and agents, DMPS negligently and proximately caused Ms. Lesyshen's injuries and other damages.

100.    The negligent acts and omissions by the DMPS Defendants were a substantial and significant contributing cause of Ms. Lesyshen's injuries and other damages, and it was reasonably foreseeable that these Defendants' negligence would cause the harm or a similar harm that Ms. Lesyshen has suffered and are and will suffering.

101.    As a direct and proximate result of the conduct of Defendants, Ms. Lesyshen suffered significant physical and mental pain and suffering and other damages.

102.    DMPS Defendants' conduct was attended by circumstances of malice, or willful and wanton conduct, which Defendants must have realized was dangerous, or that was done recklessly, without regard to the consequences to Ms. Lesyshen

103.    DMPS Defendants consciously disregarded a substantial and unjustifiable risk that they knew or should have known would cause harm to another.[2]

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

(a)    Appropriate declaratory and other injunctive and/or equitable relief;

(b)    Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)    All economic losses on all claims allowed by law;

(d)    Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)    Attorney fees and the costs associated with this action on all claims allowed by law;

(f)    Pre- and post-judgment interest at the lawful rate; and

(g)    Any further relief that this court deems just and proper, and any other relief as

---

[2] Given the circumstances of malice and willful and wanton conduct surrounding these Defendants' treatment of Ms. Lesyshen, Plaintiff anticipates seeking exemplary damages for Defendants' negligence once Plaintiff has established prima facie proof of a triable issue of exemplary damages.

17

allowed by law and equity.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 29th day of April 2026.

_s/_ _David A. Lane_____

David A. Lane
Liana Orshan
KILLMER LANE, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dlane@killmerlane.com
lorshan@killmerlane.com


*Counsel for Plaintiff*

18